IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

SHERMAN CLARK, et al.,

                Plaintiffs,

v.                                                                          CIVIL ACTION NO. 2:21-cv-00399

AMERICAN MEMORIAL LIFE
INSURANCE COMPANY, et al.,

                Defendants.

MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant American Memorial Life Insurance Company's ("AMLIC") Motion to Compel Arbitration and Stay the Proceedings. [ECF No. 16]. For reasons explained herein, the motion is **GRANTED.**

I. Background

This matter arises from a dispute over the denial of benefits claimed under a life insurance policy issued to the decedent, Robert D. Clark, Jr. *See generally* [ECF No. 1-1]. On May 30, 2019, Defendant David A. Norfleet, an agent of AMLIC, approached Mr. Clark at his home to discuss the purchase of a life insurance policy covering Mr. Clark, then age 70. *Id.* at 7. Mr. Clark completed an application for a $15,000 whole life insurance policy with Mr. Norfleet's assistance. [ECF No. 16-1, at 16–18]. The application asked biographical questions about Mr. Clark, listed some terms of the proposed insurance policy, and contained authorizations for AMLIC to

acquire Mr. Clark's medical records and to withdraw premium payments from Mr. Clark's bank account. *Id.* at 14–18.

After completing and signing the application, Mr. Clark received a form insurance policy from AMLIC on June 15, 2019. [ECF No. 17, at 2]. This policy contained significantly more terms and details than the application. *See generally* [ECF No. 16-1, at 2–12]. Listed on the front page of the policy was the statement:

**READ YOUR POLICY CAREFULLY**

**THIS POLICY IS A LEGAL CONTRACT BETWEEN YOU AND US.**

[ECF No. 16-1, at 2] (emphasis in original). The front page further stated, "This policy is issued in consideration of the application and payment of the first premium before delivery of this policy." *Id.* Also listed on the front of the policy was Mr. Clark's "**Right to Cancel.**" *Id.* (emphasis in original). This section explained that Mr. Clark could "cancel this policy" by returning it by mail to AMLIC within 30 days of receipt. *Id.* AMLIC would "then refund all premiums paid." *Id.*

Within the "General Provisions" section of the policy was a provision that stated "**Arbitration –** Any issue(s) that may arise between the parties to this policy shall be submitted to mandatory binding arbitration where permitted by law." *Id.* at 9 (emphasis in original). After receiving the policy, Mr. Clark did not exercise his right to cancel and instead paid the monthly premiums required by AMLIC until his death on January 20, 2021. [ECF No. 1-1, at 8]. AMLIC subsequently refused to pay out the $15,000 policy amount. *Id.* at 4.

Sherman Clark, as the Executor of Mr. Clark's Estate, and Amanda Clark, as the primary beneficiary of the life insurance policy ("Plaintiffs"), filed suit in the Circuit Court of Kanawha County on June 10, 2021, alleging three claims against AMLIC: (1) violation of the West Virginia Unfair Trade Practices Act and first party bad faith, (2) fraud and misrepresentation, and (3) breach of contract. *Id.* at 4, 8, 12–16. AMLIC filed its Notice of Removal on July 14, 2021. *See generally id.*[1] Due to stipulations between the parties, AMLIC has yet to serve a responsive pleading to Plaintiffs. [ECF Nos. 4, 6].

After AMLIC's counsel received the insurance policy between it and Mr. Clark, [ECF No. 24-3], AMLIC filed the instant Motion to Compel Arbitration and Stay the Proceedings with an accompanying memorandum of law on September 9, 2021, arguing that there is a valid, enforceable arbitration agreement governing the dispute. [ECF Nos. 16, 17]. Plaintiffs responded on September 23, 2021, arguing that there was no enforceable arbitration agreement between Mr. Clark and AMLIC. [ECF No. 24]. Alternatively, Plaintiffs argue the arbitration provision is invalid because it is substantively and procedurally unconscionable. *Id.*

---

[1] AMLIC's Notice of Removal—to which Plaintiffs have not objected—asserts that this Court has jurisdiction under the federal diversity statute, 28 U.S.C. § 1332. In support of removal, AMLIC notes that the parties are completely diverse and have agreed that the amount in controversy exceeds $75,000. *Id.* at 3–4. Based on these representations, I find that AMLIC has established federal subject matter jurisdiction under 28 U.S.C. § 1332 by a preponderance of the evidence. *See McCoy v. Erie Ins. Co.*, 147 F. Supp. 2d 481, 488 (S.D. W. Va. 2001).

## II. Legal Standard

The Federal Arbitration Act ("FAA") provides that written arbitration agreements involving interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA embodies "a congressional declaration of a liberal federal policy favoring arbitration agreements" and "create[s] a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). A court must give "due regard" to this federal policy favoring arbitration and should resolve "ambiguities as to the scope of the arbitration clause itself in favor of arbitration." *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 476 (1989).

In the Fourth Circuit, a party seeking to compel arbitration under the FAA must establish four elements:

> (1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the [nonmoving party] to arbitrate the dispute.

*Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500–01 (4th Cir. 2002) (quoting *Whiteside v. Teltech Corp.*, 940 F.2d 99, 102 (4th Cir. 1991)). Whether a party agreed to arbitrate a particular dispute is a question of state law governing contract formation. *Adkins*, 303 F.3d at 501.

If a court determines that an arbitration agreement is governed by the FAA, it must enforce the agreement and stay any suit or proceeding pending arbitration of any issue "referable to arbitration under such an agreement." 9 U.S.C. § 3. This provision is mandatory; a district court "has no choice but to grant a motion to compel arbitration where a valid arbitration agreement exists and the issues in a case fall within its purview." *Adkins*, 303 F.3d at 500.

## III. Discussion

AMLIC argues that Plaintiffs must settle their dispute with AMLIC through arbitration, pursuant to the terms of Mr. Clark's life insurance policy. [ECF No. 16]. Plaintiffs allege that Mr. Clark never agreed to arbitrate any dispute with AMLIC because the purported agreement lacked mutual assent and consideration. [ECF No. 24, at 1–4]. Accordingly, with Plaintiffs' arguments directed at the second *Adkins* element regarding the existence of a written agreement, the first, third, and fourth elements are not in dispute.[2] As the arbitration provision purports to cover "[a]ny issue(s) that may arise between the parties[,]" the only inquiry remaining for the Court is whether the arbitration agreement is valid under West Virginia law governing contract formation. *See Whiteside v. Teltech Corp.*, 940 F.2d 99, 102 (4th Cir. 1991) ("When deciding arbitrability, the court only determines whether, as a

---

[2] To the extent Plaintiffs argue these elements are at issue, the argument fails. As to the first element, the underlying complaint evidences a dispute between the parties. [ECF No. 1-1]. As to the third element, the transaction bears a relationship to interstate commerce because it was entered into between Mr. Clark, a citizen of West Virginia, and AMLIC, a South Dakota corporation. *See Allied–Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 274–75 (1995) (finding that the interstate commerce requirement must be interpreted broadly, to the full extent of Congress' power under the Commerce Clause). As to the fourth element, Plaintiffs have refused to arbitrate. [ECF No. 24].

matter of contract between the parties, the underlying dispute should be resolved in court or by arbitration.").

Under West Virginia law, an insurance contract, like other contracts, "is an offer and acceptance supported by consideration." *Keller v. First Nat'l Bank*, 403 S.E.2d 424, 427 n.5 (W. Va. 1991) (internal citations omitted). "The application for insurance is the offer, which the insurer then decides to accept, reject, or modify. The insurer then issues a policy . . . that evidences the insurance contract." *Id.* If the insurer makes any changes in the terms that the applicant has proposed, this constitutes a counteroffer that then shifts the power of acceptance to the applicant. *See* 1 Robert B. Hille et al., New Appleman on Insurance § 3.01(1)(a)(iv) (L. Libr. ed. 2021). "[T]here is no contract[] until the acceptance of the offer by the party receiving it is in some way actually or constructively communicated to the party making the offer." *McCully's Adm'r v. Phoenix Mut. Life Ins. Co.*, 18 W. Va. 782, 789 (1881).

In the instant case, Mr. Clark's completed application for a whole life insurance policy constitutes the offer. AMLIC's subsequent issuance of the policy with additional terms constitutes a modification or counteroffer. Mr. Clark had the opportunity and express right upon receipt to cancel the policy should he have found the modified terms of the agreement disagreeable, which would have extinguished the counteroffer and any purported contract. Instead, he continued payment of the monthly premiums pursuant to the policy in exchange for the promise of insurance coverage, constituting acceptance of and assent to the policy and its terms. Even

though Mr. Clark never signed the modified policy, West Virginia recognizes unilateral contracts in which "one party makes a promissory offer and the other accepts by performing an act rather than by making a return promise . . . ." *Schultz v. AT&T Wireless Servs., Inc.*, 376 F. Supp. 2d 685, 691 (N.D. W. Va. 2005) (finding an unsigned agreement enforceable when plaintiff continued service with defendant after receiving terms and conditions) (quoting *Cook v. Hecks, Inc.*, 342 S.E.2d 453, 483 (W. Va. 1986)). And even though Mr. Clark never gave additional consideration for the arbitration agreement, "mutual commitments to arbitrate alone constitute sufficient consideration to support the contract." *Hampden Coal, LLC v. Varney*, 810 S.E.2d 286, 294 (W. Va. 2018) (internal quotations omitted). I find the policy is a valid contract and the arbitration provision contained within it is enforceable against the Plaintiffs.[3]

Alternatively, Plaintiffs argue the arbitration provision is invalid because it is an unconscionable contract of adhesion. [ECF No. 24, at 5–9]. "The doctrine of unconscionability means that, because of an overall and gross imbalance, one-sidedness, or lop-sidedness in a contract, a court may be justified in refusing to enforce the contract as written." *Rent-A-Ctr., Inc. v. Ellis*, 827 S.E.2d 605, 616 (W. Va. 2019) (internal quotations omitted). Under West Virginia law, Plaintiffs must establish both substantive *and* procedural unconscionability to invalidate the

---

[3] Plaintiffs, as Executor of Mr. Clark's estate and third-party beneficiary to the life insurance policy, respectively, do not contest that they are subject to a valid and enforceable arbitration agreement between AMLIC and Mr. Clark even as nonsignatories. *See* [ECF Nos. 17, at 7–8; 24, at 9 n.6].

agreement. *Id.* "Substantive unconscionability involves unfairness in the contract itself and whether a contract term is one-sided and will have an overly harsh effect on the disadvantaged party." *Id.* at 619. "Procedural unconscionability is concerned with inequities, improprieties, or unfairness in the bargaining process and formation of the contract." *Id.* at 616.

I turn first to substantive unconscionability because here, the analysis is dispositive. In assessing substantive unconscionability, "courts should consider the commercial reasonableness of the contract terms, the purpose and effect of the terms, the allocation of the risks between the parties, and public policy concerns." *Id.* at 619. However, "[t]here is nothing inherently unfair or inequitable about arbitration agreements in general." *Adkins v. Labor Ready, Inc.*, 185 F. Supp. 2d 628, 637 (S.D. W. Va. 2001). Here, the terms of the arbitration provision simply do not favor one party over the other. The policy binds both parties to mandatory arbitration regarding any issues that may arise, rather than only potential claims brought by Plaintiffs. [ECF No. 16-1, at 9]. Both parties waived their right to a trial in favor of resolving any dispute through arbitration. [ECF No. 17, at 6–7]. While Plaintiffs argue that the arbitration provision has an "overly harsh effect on Plaintiffs" due to the nature of life insurance disputes, [ECF No. 24, at 8], the provision merely changes the forum of the lawsuit. I find the arbitration provision is not substantively unconscionable.

Inasmuch as I have found no substantive unconscionability, the agreement to arbitrate is not unconscionable, and I must compel arbitration. Nonetheless, I also find that the agreement is not procedurally unconscionable. Inadequacies that support a finding of procedural unconscionability "include, but are not limited to, the age, literacy, or lack of sophistication of a party; hidden or unduly complex contract terms; the adhesive nature of the contract; and . . . whether each party had a reasonable opportunity to understand the terms of the contract." *Rent-A-Ctr., Inc.*, 827 S.E.2d at 616–17 (2019). Here, the contractual nature of the policy, the arbitration provision, and Mr. Clark's right to cancel were each stated unambiguously in boldface type within the policy. [ECF No. 16-1, at 2, 9]. As the front page advised, Mr. Clark had 30 days to determine whether he wanted to be bound by the terms of the policy. He would have received a full refund of any initially paid premiums had he chosen to exercise his right to cancel. While Mr. Clark was elderly at the time he assented to the terms, Plaintiffs have not pointed to any evidence that he was incompetent or illiterate and thus unable to understand the policy. Moreover, the Supreme Court of Appeals of West Virginia has consistently found that even considering severe disparities in bargaining power and the fact that consumers frequently do not read the boilerplate terms they agree to be bound by, contracts of adhesion are "a stark reality of today's mass-production/consumer culture." *Id.* at 617 (quoting *Nationstar Mortgage, LLC v. West*, 785 S.E.2d 634, 639 (W. Va. 2016).

9

## IV. Conclusion

With the broad federal policy favoring arbitration in mind, AMLIC's Motion to Compel Arbitration and Stay the Proceedings [ECF No. 16] is **GRANTED.** The Court **DIRECTS** the parties to find a mutually acceptable arbitrator and proceed to arbitration consistent with the terms of the policy and **STAYS** all proceedings in this action pending arbitration until further order of this court. The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: November 10, 2021

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE